Judge Owsley
delivered the opinion.
To obtain from the appellees a surrender of their legal title, derived under a patent which issued to Jacob Myers the 2d Dec. 1785, the appellants exhibited their bill in the circuit court, claiming the superior equity, under the following certificate and entry, in the name of Isaac M’Crack-cn, their ancestor:
January llh, 1780. Isaac M’Cracken this day claimed a preemption of 1,000 acres of land, at the state price, in the district of Kentucky, lying on Cartright’s creek, a branch of Salt river, running down the said creek for quantity, to include his cabin, by marking and improving the same in the year 1775, satisfactory proof being marie to tbe court, they are of opinion that said M’Cracke» has a right to a preemption of 1,000 acres ofland, to include the said improvement, and that a certificate issue accordingly:
25(h December, ll82; Isaac M’Cra.eken enters a preemption warrant of 1,000 acres, No. 1309, on the first fork of Cartrigbt’s creek, below Cartright’s station, to include bis improvement, and to extend up and down both sides of the creek for quantity.
This entry was surveyed, not in a rectangular figure, but *209 ¾« both aides ef Cartright’s creek, including M’Cruefcen’s improvemettt near lb* creek-, and just below the first fork •f (he creek below Cartrigbt’a station, and extending up %nd down the creek much longer than wide,
. «ailing >io in-dude an rn. F^owmen. £# ⅛¾. sides of the creek > for ⅛¶⅜⅞⅜.* ed rec;.'.ng»v !ar;.vbsqitar* upper & lower lines m its J^ss* those |⅛ ⅛ he «. qui distant f °™emge "⅛ tiwsldeTfoes par ⅝1 »otha ff'íhát °U"rt ,'hg cl^eic tobe cucos-<n foe «■**- ve^'
At the date of the entry, a trace passed by the improvement to Cartright’s station, and the station, creek, and improvement are proven to have been, at that time, generally known to those conversant in the vicinity, so tbal ttare could have been no difli ulty, by the exereise of ordinary diligence, in a subsequent locator finding the improvement But there is delineated upon the coirnectid plat, a fork of Cartright’s creek, emptying therein a few poles below'Cartright’s station,, and above the fork upon which M’Cracken’s improvement is found; and it is contended, that instead of the lower fork, the locator of the ea* try intended the land should lie On the upper. It is evident, ho vever, from the contiguity of the upper fork to the station, the locater intended his land snouid be on the lower, and not the upp^r fink. if the upper fork was the one intended, the claim would, of necessity, cover the station; and from the description contained in the entry, it is not to be presumed that any part of the land was intended to in elude the station. Besides, if the locator had designed to appropriate the land around the station, the station itself, from its gnat notoriety, would have furnished a much more suitable object of location, than that of the fork of the Creek.
I.istead of the mode which has been pursued in making the survey, however, the entry should have been surveyed ⅛ a rectangular figure with lines of equal length, and so as tbe upper and lower lines would he r qui distant irotn the improvement, and the creek to bisect those lines iii the cen-tre, and the lines on each side of the creek to extetid par allel to the general course of the creek. By this mode of surveying, the hue will lie on both sides of the creek, and upon tiie first fork of the ereek emptying therein on the east side and below the station, and include the improve* went.
Notwithstanding however, the entry might, from the proof in the cause, be otherwise sustained, mere exists in ibe record one objection to it, not to be gotten over. . The ohjecjio t to which we allude, is that of Isaac M’Crueken, dr ivhote name it was made, having, previno-lv to iis date, departed ibis life- He is proven to nave besa at *210 tie with the Indians at the Blue licks, in August, lTTSS#’ ■ and, front the evidence in (be cause, we apprehend, he was among the unfortunate sufferers who fell in that disastrous conflict. No witness has spoken positively of his having fallen there, but his brother thinks he afterwards recognized his person among the slain; and after disappearing oh the day of battle, he has never, either by those who were taken captives by the Indians, or any others, been heard of since.
An entry teade in the name of á dead man is void at common law, but comes under the equity of the act of 1792, which makes grants enure to the benefit of the representatives of a deceased grantee, but the entry, no mat tfer When made, in the name of a dead than, c«n take date only from the passage of that act, and cannot relate back so as to defeat a title acquired before that act
He must, therefore, be supposed to have then departed this life, and however strong the claim of the representatives of him who thus fell in the defence of his country, may press upon the feelings and sympathies of the court, yet testing their case by the rules and principles of law, and it is according to those rules and principles their case must bd tested, the principle is not perceived upon which the entry* thereafter made in the uame of their ancestor, can be sustained.
It has heretofore been held, that a grant to a dead matt is inoperative; and if the grant be void, it would seem to follow, that an entry made under similar circumstances, cannot be Valid. To acquire title under the land laws of Virginia, before a grant can be obtained, an entry and survey were essentially necessary. And whatever may have been the inducements with the legislature, to require those things to be done, as they have thought proper to do so, those requisitions must be conformed to, in the name of the' living, and not of the dead. Indeed, we cannot imagine, how it is possible for any act, necessary to the acquisition of right,- to be done in the name of a dead person, and at the same time have any legal operation. After his decease, the dead person, has no rights, and no rights can be acquired by others in his name. Such rights as the decedent may possess in larids, at the time of his death, may, by operation of law, descend upon his heirs; but then as the right is in them, if it be inchoate, and not complete, it must be perfected in their names, and not in the name of their deceased ancestor.
We have thus considered the operation which the enfrj' in the name of M’Cracken, possessed when it was made; but since then, at the session of 1792, (1 Littell, 160,) the legislature of this country, after reciting that, in some instances grants have issued in (he names of persons- who were deceased prioc to the date of the grant, and cases of ⅜* same nature may happen in future; enacted, that in all *211 iac!i cases, (he land conveyed shall descend to the heir, heirs, or devisees, in the same manner as it would do, had the grant issued in the lifetime of such decedent.
It becomes proper, therefore, that we should enquire as to the effect which this statute has produced upon the entry of M’Cracken, And it should here be remarked, that the entry of M’Cracken was not only made in his name, but the survey was also made and the patent issued in bis name.
According to the letter of the act cited, therefore, the patent of M’Cracktn must ensue to the benefit of his heirsj but, still the question recurs as to the effect of the act up-en the entry and survey.
The letter of the act, perhaps does not, strictly speaking, apply to either an entry or survey; but when the object and intention of the legislature is adverted to, we apprehend, there can be little doubt, but (bat both entries and surveys were designed to he eptbraced by the act. In fact, by making valid the grant, that which perfects andconsp-mates the title, seems strongly tp imply an intention to cure ail defects of the same description of that which vitiated the grant, in relation to any previous step necessary to the perfecting of the title. But whilst the act is admitted to embrace entries as well as grants, it is plain that, until its enactment, it can have had nooperatiop, apd consequently until then, the entry of M’Cracken can have conferred no right upon his heirs; apd after then, the act should not be construed so as to make the entry, by relating hack to its date, overreach apy title which others in the piean time, may have acquired under an adverse claim.
in the present cpse then, as the title of Myers emanated from the commonwealth of Virginia in IT85, prior, to .the passage of the act, it follows that, under the entry of M’-Crackeu with (fie surveyor, the appellants canpol be entitled to relief,
But the appellants’ claim for relief is not asserted exclusively onder the entry with the surveyor; their, ancestor in his lifetime, bad obtained from the proper authority, a preemption certificate; and under that certificate, as well as the entry, they have sought relief.
Assuming the certificate to contain the requisite precision and certainty of description, and in the present contest we shall so consider it, there is no question but that it conferred upon M’Cracken, in his lifetime, a preemptive right tp *212 the land (herein described, and upon bis death, that right, by operation of law, descended upon his heirs, the preseift apjiellanis. li is obvious, however, (hat the certificates, unaided by an entry with the surveyor, cannot confer upoa the appellants a right to recover against an adverse claim.
Although a cer ifica'eior p .e’ ip ion, the preemp ¡ve li'.n. on lit grantee, yei that rigla ⅛ losi if mi exercised by en trj in the pro per name Within the time limited for entering preemption warrants.
A title to lands com-píe d before t >e separation of this state from Virginia, can not b • r{recc-ed by an act of the Kentucky legis-lará.
The appellants might, no doubt, by causing «n entry tó be made wiih the si^ve ur, and carrying Hie same into grant, have overreached any adverse title, derived under aa entry, junior in dale to the certificate; but to enable theta to do so, it is indispensable that an entry should have been made with the surveyor, withiu the time prescribed for lo» eating certificates; for holes® located within the prope> time, the right of preemption becomes extinct under the law authorising « critícales to be granted.
The entry under which the appellants assert their claim, is not, however, one of that character. It was, no doubt, Ipade >n due lime, but it was made in the name of a dead mao, and being inoperative for that cause, cannot have preserved to the appellants tfie right of preemption. By tbe act of this country already cited, it is (rue the legisla» ture have, (as far as it was practicable for them to do), confirmed tire entry But before the passage of the act, and before the separation of this state from Virginia, tire right of preemption gained by the appellants under the certificate, had become extinct, and as the patent oí Myers bad been previously obtained, his right, at the separation, must have been complete.
The act of this country, therefore, cannot, either by re* riving the right of preemption, or making the entry relate back to its date, have any prejudicial effect on the right of those claiming under the pal* nt of Myers. For the seventh clause of the compact between the slates, declares, that all private rights and interest of lands, within the then district (now this state) derived from the laws of Virginia priot to the separation, shall remain valid and secure under the laws of this state, and shall be determined by the laws t hen existing in the state of Virginia. And to extend relief to the appellants under the act of 1792, would not only be determining by the laws of this country, instead of those of Virginia in force at the separation, the right of Myers derived under the lavys of that state, but would moreover be prostrating that right which, by the compact, is requir* ed i.o remain valid and secure.
Upon the whole, we think, the appellants have aot *213 shewn themselves entitled to reluí, and that the court below consequently properly decreed a dismissal of their bill.
'Alie decree must be affirmed with cost.